HUBERT T. LEE
NY Bar No. 4992145
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
150 M St. NE, Rm 4.1116
Washington, DC 20002
(202) 514-1806 (phone); (202) 514-8865 (fax)
Hubert.lee@usdoj.gov

SONYA J. SHEA
CA Bar No. 305917
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
(303) 844-7231 (phone); (303) 844-1350 (fax)
sonya.shea@usdoj.gov

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| OREGON CATTLEMEN'S ASSOCIATION, | Case No.: 3:19-cv-00564-AC |
| Plaintiff(s), | |
| v. | OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Defendant(s). | |

# TABLE OF CONTENTS

Table of Contents .................................................................................................. ii

Introduction ........................................................................................................... 1

Background ............................................................................................................ 4

    I.     Statutory and Regulatory Background ................................................. 4

         A.    Clean Water Act ....................................................................... 4

         B.    Prior Regulatory Definitions of "Waters of the United States" and Litigation ................................................................................ 4

               1.    The 1980s Regulations ................................................. 4

               2.    The 2015 Rule ............................................................... 6

               3.    The Repeal Rule and Navigable Waters Protection Rule .............. 7

    II.    Procedural History ........................................................................... 9

Standard of Review ............................................................................................... 9

Argument ............................................................................................................. 10

    I.     The Court Lacks Jurisdiction over Plaintiff's Challenge to the NWPR. ............... 10

         A.    Plaintiff's Claims Are Unripe. ................................................ 10

         B.    Plaintiff Lacks Standing. ......................................................... 11

    II.    Plaintiff Is Unlikely to Succeed on the Merits. ................................ 13

         A.    *Chevron* Requires Deference to the Agencies' Reasonable Interpretation. ....................................................................... 14

               1.    The NWPR Does Not Exceed the Permissible Limits of the CWA. ............... 14

        2.      The Agencies' Revised Regulatory Definition of "Waters of the United States" Is a Permissible Construction of Ambiguous Statutory Terms. ...................................................... 20

   B.      The NWPR Reasonably Defines "Tributary" To Include Intermittent Flow and "Adjacent Wetlands" to Include Certain Non-Abutting Wetlands. .................................................................... 22

   C.      Issue Preclusion Does Not Bar the NWPR. ................................. 24

III.   Plaintiff Fails to Demonstrate Imminent, Irreparable Harm from the NWPR. ...................................................................................................... 27

   A.      Plaintiff's Allegations of Irreparable Harm Are Premature. ..................... 27

   B.      Plaintiff Fails to Show Imminent, Irreparable Harm from the NWPR. .............................................................................................. 29

   C.      Plaintiff's Alleged Injuries Are Not Irreparable. ....................................... 31

IV.   The Balance of Equities Weighs in Favor of the Agencies, and Issuance of the Injunction Requested by Plaintiff Would Harm the Public Interest. .............. 33

V.   Even if Preliminary Injunctive Relief Is Awarded, the Remedies Proposed by Plaintiff Are Overbroad and Not Appropriately Tailored............................. 34

Conclusion .................................................................................................................. 35

# TABLE OF AUTHORITIES

## CASES

*Am. Petroleum Inst. v. Jorling*,
   710 F. Supp. 421 (N.D.N.Y. 1989) ............................................................................ 32

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009) ...................................................................................... 9

*Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cty.*,
   893 F. Supp. 301 (D.N.J. 1995) .................................................................................. 32

*All. of Auto. Mfrs. v. Hull*,
   137 F. Supp. 2d 1165 (D. Ariz. 2001) ........................................................................ 32

*California v. Wheeler*,
   No. 3:20-cv-03005, 2020 WL 3403072 (N.D. Cal. June 19, 2020) ............................... 9, 22, 23

*Caribbean Marine Servs. Co. v. Baldrige*,
   844 F.2d 668 (9th Cir. 1988) ...................................................................................... 30

*Chevron, U.S.A., Inc. v. NRDC*,
   467 U.S. 837 (1984) ................................................................................. 14, 15, 20, 22

*Citicorp Servs., Inc. v. Gillespie*,
   712 F. Supp. 749 (N.D. Cal. 1989) ............................................................................ 32

*City & Cty. of S.F. v. Trump*,
   897 F.3d 1225 (9th Cir. 2018) .................................................................................... 34

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398, (2013) ................................................................................................... 12

*Colorado v. EPA*,
   No. 1:20-cv-01461, 2020 WL 3402325 (D. Colo. June 19, 2020)
   *appeal docketed*, No. 20-1238 (10th Cir.) .................................................................. 9

*Cty. of Maui, Hawaii v. Haw.Wildlife Fund*,
   140 S. Ct. 1462 (2020) ................................................................................................ 18

*E. Bay Sanctuary Covenant v. Trump*,
   950 F.3d 1242 (9th Cir. 2020) ............................................................................... 33, 34

*Entergy Corp. v. Riverkeeper, Inc.*,
　556 U.S. 208 (2009)......................................................................................... 20

*Feldman v. Ariz. Sec'y of State's Office*,
　842 F.3d 613 (9th Cir. 2016) ......................................................................... 33

*Georgia v. Wheeler*,
　418 F. Supp. 3d 1336 (S.D. Ga. Aug. 21, 2019)............................................ 7

*In re EPA & Dep't of Def. Final Rule*,
　803 F.3d 804 (6th Cir. 2015) ........................................................................... 6

*In re U. S. Dep't of Def. & EPA Final Rule*,
　713 F. App'x 489 (6th Cir. 2018) .................................................................... 7

*Indep. Acceptance Co. v. California*,
　204 F.3d 1247 (9th Cir. 2000) ...................................................................... 10

*Lopez v. Candaele*,
　630 F.3d 775 (9th Cir. 2010) ........................................................................ 12

*Marks v. United States*,
　430 U.S. 188 (1977)................................................................................... 3, 16

*Marsh v. Or. Nat. Res. Council*,
　490 U.S. 360 (1989)....................................................................................... 10

*Mayo Found. for Med. Educ. & Research v. United States*,
　562 U.S. 44 (2011)......................................................................................... 20

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
　463 U.S. 29 (1983)......................................................................................... 22

*Nat'l Ass'n of Home Builders v. EPA*,
　667 F.3d 6 (D.C. Cir. 2011) ............................................................... 11, 12, 13

*Nat'l Ass'n of Mfrs v. Dep't of Def.*,
　138 S. Ct. 617 (2018).................................................................................. 7, 18

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*,
　545 U.S. 967 (2005)........................................................... 2, 13, 15, 19. 20, 23

*Nat'l Park Hositality Ass'n v. Dep't of Interior*,
　538 U.S. 803 (2003)....................................................................................... 10

*New York State Bar Ass'n v. Reno,*
   999 F. Supp. 710 (N.D.N.Y. 1998) ....................................................................... 27

*Nken v. Holder,*
   556 U.S. 418 (2009) ........................................................................................... 33

*N. Cal. River Watch v. City of Healdsburg,*
   496 F.3d 993 (9th Cir. 2007) .............................................................................. 17

*Prof'l Towing & Recovery Operators of Ill. v. Box,*
   No. 08 C 4096, 2008 WL 5211192 (N.D. Ill. Dec. 11, 2008) .................................. 32

*Rapanos v. United States,*
   547 U.S. 715 (2006) .................................... 2, 5, 6, 14, 15, 16, 19, 20, 22, 23, 24, 25

*Sassman v. Brown,*
   73 F. Supp. 3d 1241 (E.D. Cal. 2014) ............................................................ 30, 31

*Sierra Club v. U.S. Army Corps of Eng'rs,*
   990 F. Supp. 2d 9 (D.D.C. 2013) ........................................................................ 34

*Sierra Forest Legacy v. Rey,*
   577 F.3d 1015 (9th Cir. 2009) .............................................................................. 9

*S.O.C., Inc. v. County of Clark,*
   152 F.3d 1136 (9th Cir. 1998) ...................................................................... 31, 32

*Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs (SWANCC),*
   531 U.S. 159 (2001) ........................................................................... 4, 14, 19, 24

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 (2016) ....................................................................................... 12

*State Nat'l Bank of Big Spring v. Lew,*
   958 F. Supp. 2d 127 (D.D.C. 2013),
   *aff'd in part, rev'd in part,* 795 F.3d 48 (D.C. Cir. 2015) ...................................... 11

*Texas v. EPA,*
   389 F. Supp. 3d 497 (S.D. Tex. 2019) ................................................................... 7

*Texas v. United States,*
   523 U.S. 296 (1998) ........................................................................................... 27

*U.S. Army Corps of Eng'rs v. Hawkes, Inc.*,
　136 S. Ct. 1807 (2016) ................................................................. 1, 18, 19

*United States v. Bailey*,
　571 F.3d 791 (8th Cir. 2009) ................................................................. 18

*United States v. Cundiff*,
　555 F.3d 200 (6th Cir. 2009) ................................................................. 18

*United States v. Donovan*,
　661 F.3d 174 (3d Cir. 2011) ................................................................. 18

*United States v. Eurodif S.A.*,
　555 U.S. 305 (2009) ................................................................. 19, 20

*United States v. Gerke Excavating, Inc.*,
　464 F.3d 723 (7th Cir. 2006) ................................................................. 17

*United States v. Johnson*,
　467 F.3d 56 (1st Cir. 2006) ................................................................. 18

*United States v. Mendoza*,
　464 U.S. 154 (1984) ................................................................. 24, 25

*United States v. Nat'l Treasury Emps. Union*,
　513 U.S. 454 (1995) ................................................................. 34

*United States v. Riverside Bayview Homes, Inc.*,
　474 U.S. 121 (1985) ................................................................. 4, 14, 19, 20, 24

*United States v. Robertson*,
　875 F.3d 1281 (9th Cir. 2017), *cert. granted, judgment vacated*, 139 S. Ct. 1543 (2019) ....... 17

*United States v. Robison*,
　505 F.3d 1208 (11th Cir. 2007) ................................................................. 17

*Univ. of Tex. v. Camenisch*,
　451 U.S. 390 (1981) ................................................................. 34

*U.S. Philips Corp. v. KBC Bank N.V.*,
　590 F.3d 1091 (9th Cir. 2010) ................................................................. 31

*Winter v. NRDC*,
　555 U.S. 7 (2008) ................................................................. 9

**RULES**

Fed. R. Evid. 601 (2008) .................................................................................................... 11

**STATUTES**

5 U.S.C. § 706(2)(A) ........................................................................................................... 9

5 U.S.C. § 706(2)(C) ........................................................................................................... 9

33 U.S.C. §§ 1251 *et seq.* ................................................................................................... 4

33 U.S.C. § 1251(a) ............................................................................................................. 4

33 U.S.C. § 1251(b) ............................................................................................................. 4

33 U.S.C. § 1311(a) ............................................................................................................. 4

33 U.S.C. § 1344(f) ............................................................................................................ 28

33 U.S.C. § 1344(f)(1)(A) ................................................................................................. 28

33 U.S.C. § 1362(7) ................................................................................................... 2, 4, 14

**CODE OF FEDERAL REGULATIONS**

33 C.F.R. § 325.1 ............................................................................................................... 11

33 C.F.R. § 328.3 ................................................................................................................. 1

33 C.F.R. § 328.3(a) (1987) ................................................................................................. 4

33 C.F.R. § 328.3(3) (1987) ................................................................................................. 1

33 C.F.R. § 328.3(a)(2) (2020) .......................................................................................... 26

33 C.F.R. § 328.3(a)(2) (2019) .......................................................................................... 26

33 C.F.R. § 328.3(a)(4) (2020) .......................................................................................... 26

33 C.F.R. § 328.3(a)(5) (2019) .......................................................................................... 26

33 C.F.R § 328.3(c) (2019) ............................................................................ 26

33 C.F.R § 328.3(c)(1) (2020) ................................................................ 23, 26

33 C.F.R § 328.3(c)(12) (2020) .................................................................... 26

40 C.F.R. § 232.2(q) (1988) ............................................................................ 4

## FEDERAL REGISTER

42 Fed. Reg. 37,122 (July 19, 1977) .............................................................. 4

80 Fed. Reg. 37,054 (June 29, 2015) .............................................................. 6

83 Fed. Reg. 5200 (Feb. 6, 2018) ............................................................... 6, 7

84 Fed. Reg. 56,626 (Oct. 22, 2019) ............................................................. 7

85 Fed. Reg. 22,250 (Apr. 21, 2020) ................................ 1, 7, 8, 16, 21, 22, 23, 24, 26, 28, 29, 33

## OTHER AUTHORITIES

11A Wright & Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2013) ........................ 32

## GLOSSARY

2015 Rule    Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015)

CWA    Clean Water Act

EA    Economic Analysis for the Navigable Waters Protection Rule: Definition of "Waters of the United States," *available at* https://www.epa.gov/nwpr/navigable-waters-protection-rule-supporting-documents

Mot.    Plaintiff's Motion for Preliminary Injunction, Dkt. No. 97 (June 8, 2020)

NWPR    Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020)

Repeal Rule    Definition of "Waters of the United States"—Recodification of Pre-existing Rules, 84 Fed. Reg. 56,626 (Oct. 22, 2019)

RTC    Response to Comments for the Navigable Waters Protection Rule: Definition of "Waters of the United States," *available at* https://beta.regulations.gov/document/EPA-HQ-OW-2018-0149-11574

Defendants (the "Agencies") respectfully request that the Court deny Plaintiff's motion, Dkt. No. 97 ("Mot."), which seeks to preliminarily enjoin, in part, the Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020) ("NWPR").

## INTRODUCTION

The NWPR brings decades of debate regarding the jurisdictional limits of the Clean Water Act ("CWA") to a close. Going forward, anyone wondering whether a water or wetland constitutes a "waters of the United States" subject to CWA permitting will be able to pull out the Code of Federal Regulations and review 33 C.F.R. § 328.3. And in more cases than before, those regulations alone will tell them if a CWA permit is needed to discharge into a particular water. The Agencies' 1986 regulations themselves, by contrast, did not provide the same level of clarity. They set an indeterminate jurisdictional boundary around all waters "which could affect interstate or foreign commerce." *See, e.g.*, 33 C.F.R. § 328.3(3) (1987). The "notoriously unclear" regime of "significant nexus" inaugurated by the Supreme Court's 2006 *Rapanos* decision further muddied the waters, *see U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1816 (2016) (Kennedy, J., concurring), spawning years of litigation over the extent of jurisdictional waters.

The NWPR—including the clarity and consistency of a regulatory regime with fewer transaction costs and fewer consultants—will be a significant public benefit with comparable environmental protection together with the protective state regulatory regimes. *See* Economic Analysis at 171-182 (Quantitative Assessment of Potential National Impacts) (hereinafter "EA") (*available        at*       https://www.epa.gov/nwpr/navigable-waters-protection-rule-supporting-documents). The Agencies' well-reasoned, well-explained, and legally well-supported new

definition of "waters of the United States" under the CWA, 33 U.S.C. § 1362(7), should be affirmed. And Plaintiff's motion for preliminary injunction should be denied.

What constitutes a "water of the United States" is a textbook example of statutory ambiguity for which agencies are "delegat[ed] . . . authority to . . . fill the statutory gap in reasonable fashion." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005). Thus, the question for this Court on the merits is whether the NWPR is a reasonable construction of the CWA. Such "agency construction" will displace even prior *judicial* decisions unless such a holding "follow[ed] from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Id.* at 982.

Plaintiff argues that a four-Justice plurality opinion from the Supreme Court's *Rapanos* decision marks a hard edge to the Agencies' statutory authority under the CWA. Not a single court of appeals to previously consider this question agrees with Plaintiff. Plaintiff nevertheless says this plurality opinion, in effect, "leaves no room for" the NWPR's definition of "waters of the United States." That is incorrect. To be sure, five Justices expressed that there are limits to the Agencies' authority under the CWA. Those limits stem from Congress's use of the term "navigable waters" in the statute. *Rapanos v. United States*, 547 U.S. 715, 730-31 (Scalia, J., plurality), 760-61 (Kennedy, J., concurring) (2006). But one Justice expressed that "[a]bsent *more specific regulations*, . . . the Corps must establish a significant nexus on a case-by-case basis when it seeks to regulate wetlands based on adjacency to nonnavigable tributaries." *Id.* at 782 (Kennedy, J, concurring). And though the Chief Justice joined the four-Justice plurality, he separately concurred. He wrote the Agencies should be given "generous leeway by the courts" to "develop[] *some* notion of an outer bound to the reach of their authority." *Id.* at 758 (Roberts, C.J.,

2

concurring). In promulgating the NWPR, the Agencies heeded Chief Justice Roberts. They established an appropriate outer bound to the reach of their authority.

Plaintiff also insists that under *Marks v. United States*, 430 U.S. 188 (1977), the *Rapanos* plurality controls. That is the wrong inquiry here. The Court need not apply *Marks* to determine which *Rapanos* opinion is "controlling." And even if *Marks* is applicable, no court has applied *Marks* to *Rapanos* in the manner described by Plaintiff.

Plaintiff also fails to meet the high bar of showing imminent irreparable harm. In claiming irreparable harm arising specifically from the NWPR, Plaintiff offers only one single declaration. This single declaration contains one vague paragraph generally alleging that its unnamed members will be harmed by the NWPR. The evidence is so vague, it is impossible to discern if Plaintiff's members conduct activities regulated by the CWA in waters that are now jurisdictional under the NWPR. This lack of specificity falls woefully short of showing irreparable harm. For similar reasons, Plaintiff lacks standing and this case is unripe.

Finally, Plaintiff fails to show that the balance of harms and the public interest weigh in favor of a preliminary injunction. The public and governments will receive more benefits from replacing the "significant nexus" standard with the clearer lines the NWPR draws. *See* EA at xiv-xxiii. And, Plaintiff seeks relief that is overbroad. Accordingly, Plaintiff's motion for preliminary injunction should be denied.

## BACKGROUND

### I.    Statutory and Regulatory Background

#### A.    Clean Water Act

Congress enacted the CWA, 33 U.S.C. §§ 1251 *et seq*., with the objective "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters," *id*. § 1251(a), while declaring its policy to "recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution." *Id*. § 1251(b). The Act prohibits "the discharge of any pollutant by any person," *id*. § 1311(a), to a subset of the Nation's waters identified as the "navigable waters," which "means the waters of the United States." *Id.* § 1362(7).

#### B.    Prior Regulatory Definitions of "Waters of the United States" and Litigation

##### 1.    The 1980s Regulations

The Corps first promulgated regulations defining "waters of the United States" in the 1970s. *See, e.g.*, 42 Fed. Reg. 37,122, 37,144 (July 19, 1977). In the late 1980s, the Agencies adopted regulatory definitions substantially similar to the 1977 definition. *See* 33 C.F.R. § 328.3(a) (1987) (Corps); 40 C.F.R. § 232.2(q) (1988) (EPA) (collectively, the "1986 Regulations").

Over time, the Agencies refined their application of the regulatory definition of "waters of the United States," as informed by three Supreme Court decisions. In *Riverside Bayview*, the Court deferred to the Corps' assertion of jurisdiction over wetlands abutting a traditional navigable water. *United States v. Riverside Bayview Homes, Inc*., 474 U.S. 121,131-35 & n.9 (1985). But in *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159 (2001) ("*SWANCC*"), the Court rejected the Corps' assertion of CWA jurisdiction over non-navigable, isolated, intrastate

4

ponds and concluded that "the text of the statute will not allow" the federal government to extend CWA jurisdiction to "ponds that are not adjacent to open water." *Id*. at 168.

A few years later, in *Rapanos*, the Supreme Court assessed the Corps' assertion of jurisdiction over four wetlands pursuant to the 1986 Regulations. *Rapanos*, 547 U.S. at 719-20, 729-30. Both the plurality and Justice Kennedy determined that the Corps' application of the regulatory definition exceeded the scope of the CWA and that the cases should be remanded. *Id.* at 757; *id.* at 786-87 (Kennedy, J., concurring). The plurality stated that "the traditional term 'navigable waters' . . . carries *some* of its original substance" and "includes, at bare minimum, the ordinary presence of water." *Id.* at 734 (plurality) (emphasis in original). At the same time, the plurality stated the term "waters of the United States" does "not necessarily exclude *seasonal* rivers, which contain continuous flow during some months of the year but no flow during dry months." *Id*. at 732 n.5 (emphasis in original). Thus, the plurality would have limited "waters of the United States" to traditional navigable waters and those "relatively permanent bod[ies] of water connected to traditional interstate navigable waters" and "wetlands with a continuous surface connection" to such relatively permanent waters. *Id.* at 739, 742. The plurality would have excluded from jurisdiction "[w]etlands with only an intermittent, physically remote hydrologic connection to 'waters of the United States.'" *Id.* at 742.

In concurring, Justice Kennedy agreed that when enacting the CWA, Congress was not legislating to the full extent of its Commerce Clause power. He opined that jurisdiction extends to waters that have a "'significant nexus' to waters that are or were navigable in fact or that could reasonably be so made." *Id.* at 759 (Kennedy J., concurring); *id*. at 779 ("[T]he word 'navigable' in the Act must be given some effect"). But Justice Kennedy rejected "the dissent" view that the

CWA "would permit federal regulation whenever wetlands lie alongside a ditch or drain, however remote and insubstantial, that eventually may flow into traditional navigable waters." *Id.* at 778. Indeed, the dissent found the Corps' broad regulations "reasonable," and would have upheld the findings of jurisdiction. *Id.* at 810 (Stevens, J., dissenting).

Though joining the four-Justice plurality, in his *Rapanos* concurrence, Chief Justice Roberts criticized the Agencies for their failure to use the "generous leeway by the courts in interpreting the statute" to "develop[] *some* notion of an outer bound to the reach of their authority" following the Court's *SWANCC* decision. *Id*. at 757-58 (Roberts, C.J., concurring). In developing the NWPR, the Agencies set out to heed Chief Justice Roberts's critique.

### 2.    The 2015 Rule

In 2015, the Agencies revised the regulatory definition of "waters of the United States." *See* Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015) ("2015 Rule"). The 2015 Rule claimed reliance on the Agencies' interpretation of Justice Kennedy's "significant nexus" discussion as its legal touchstone. *See id.* at 37,060. Multiple parties sought judicial review of the 2015 Rule in district courts across the country, including Plaintiff in *Washington Cattlemen's Ass'n v. EPA*, No. 0:15-cv-03058 (D. Minn.) and later in this case. ECF No. 1 at 14. Plaintiff and other parties also filed petitions for review directly in the courts of appeals. *Id.* In October 2015, the Sixth Circuit stayed the 2015 Rule nationwide. *See In re EPA & Dep't of Def. Final Rule*, 803 F.3d 804, 808-09 (6th Cir. 2015). The Agencies then returned to their longstanding practice of applying nationwide the 1986 Regulations' definition of "waters of the United States," as informed by applicable agency guidance documents and consistent with Supreme Court decisions and longstanding agency practice. *See* 83 Fed. Reg. 5200, 5201 (Feb. 6,

2018). After the Supreme Court ruled that challenges to the 2015 Rule must be brought in district court, *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 624 (2018), the Sixth Circuit vacated its nationwide stay, *In re U.S. Dep't of Def. & EPA Final Rule*, 713 F. App'x 489, 490-91 (6th Cir. 2018).

Two courts eventually ruled on the 2015 Rule at summary judgment. They concluded that the rule was "unlawful" and remanded the 2015 Rule back to the Agencies. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. Aug. 21, 2019); *Texas v. EPA*, 389 F. Supp. 3d 497, 503-06 (S.D. Tex. 2019). The various grounds given by the Southern District of Georgia included that "the definition of waters of the United States in the [2015] WOTUS Rule extends beyond the [Agencies'] authority under the CWA." *Georgia*, 418 F. Supp. 3d at 1360.

### 3.    The Repeal Rule and Navigable Waters Protection Rule

In 2017, the Agencies began reconsidering the 2015 Rule. They conducted a notice-and-comment rulemaking process. And, taking into consideration the court orders remanding the 2015 Rule, the Agencies issued a final rule repealing the 2015 Rule and reinstating the pre-2015 Rule regulatory definition of "waters of the United States." *See* 84 Fed. Reg. 56,626, 56,626 (Oct. 22, 2019) ("Repeal Rule") ("The agencies will implement the pre-2015 . . . regulations informed by applicable agency guidance documents and consistent with Supreme Court decisions and longstanding agency practice."). The Repeal Rule went into effect on December 23, 2019. *Id.* at 56,626. Multiple parties have sought judicial review of the Repeal Rule in various district courts.

On January 23, 2020, the Agencies signed a final rule that defines "waters of the United States." The NWPR was published in the Federal Register on April 21, 2020, and went into effect on June 22, 2020, 85 Fed. Reg. 22,250 (Apr. 21, 2020), except in the state of Colorado where a

preliminary injunction applies (*see infra* at 9). The NWPR defines the limits of federal jurisdiction consistent with the Constitution, CWA, and case law, including both the plurality and concurring opinions in *Rapanos*. It establishes four simple categories of jurisdictional waters that improve regulatory clarity. Specifically, the Rule defines the "waters of the United States" included in the CWA term "navigable waters" as: "(1) The territorial seas and traditional navigable waters; (2) tributaries of such waters; (3) certain lakes, ponds, and impoundments of jurisdictional waters; and (4) wetlands adjacent to other jurisdictional waters (other than waters that are themselves wetlands)." *Id*. at 22,273. The Rule also specifies "exclusions for many water features that traditionally have not been regulated, and define[s] the operative terms used in the regulatory text." *Id.* at 22,270/3; *see also id.* at 22,340-41 (regulatory text). Ephemeral features are categorically excluded. *Id.* at 22,340/1.

The NWPR presents "a unifying legal theory for federal jurisdiction over those waters and wetlands that maintain a sufficient surface water connection to traditional navigable waters or the territorial seas." 85 Fed. Reg. at 22,252/1. But it is not a rote adoption of the *Rapanos* plurality's test. The NWPR includes "intermittent" tributaries that "flow[] continuously during certain times of the year and more than in direct response to precipitation (*e.g*., seasonally when the groundwater table is elevated or when snowpack melts)." *Id.* at 22,338. The NWPR also includes "adjacent wetlands" that are "inundated by flooding" from a jurisdictional water during "a typical year," and those separated from a jurisdictional water "only by a natural berm, bank, dune, or similar natural feature." *Id.* at 22,338. The Agencies appropriately explained their reasons for this. *See*, *e.g.*, *id*. at 22,303-04.

## II.    Procedural History

Plaintiff initiated this lawsuit on April 16, 2019, challenging the 2015 Rule. Dkt. No. 1. On July 26, 2019, the Court granted Plaintiff's Motion for Preliminary Injunction and enjoined the 2015 Rule in the state of Oregon. *See* Dkt. No. 58. On March 2, 2020, the Court vacated the July 26, 2019 Preliminary Injunction. Dkt. No. 81. On May 1, 2020, Plaintiff filed a supplemental complaint adding challenges to portions of the NWPR. Dkt. No. 90. Other parties have challenged the NWPR in various district courts. One court denied a preliminary injunction in a challenge brought by 17 states (including Oregon), finding those claims unlikely to succeed on the merits. *California v. Wheeler*, No. 3:20-cv-03005, 2020 WL 3403072, at *5-8 (N.D. Cal. June 19, 2020). Another court granted a preliminary injunction in Colorado, staying the effective date of the NWPR in the state of Colorado. *Colorado v. EPA*, No. 1:20-cv-01461, 2020 WL 3402325 (D. Colo. June 19, 2020) *appeal docketed*, No. 20-1238 (10th Cir.).

## STANDARD OF REVIEW

To obtain a preliminary injunction, Plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Courts must consider all four *Winter* factors, *see Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1019 (9th Cir. 2009), and may not issue an injunction based on the mere possibility of irreparable injury. *See Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

In assessing Plaintiff's likelihood of success on the merits, the Court must apply the Administrative Procedure Act ("APA") standard, 5 U.S.C. § 706(2)(A), (C). Agency action may

be overturned only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 376 n.21 (1989). This standard of review is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Indep. Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000) (internal quotation marks and citations omitted).

## ARGUMENT

### I.    The Court Lacks Jurisdiction over Plaintiff's Challenge to the NWPR.

Plaintiff's preliminary injunction must be denied and its complaint dismissed for lack of subject matter jurisdiction. It has failed to establish any ripe injury that is fairly traceable to and redressable by enjoining the NWPR provisions specifically.

### A.    Plaintiff's Claims Are Unripe.

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (citation omitted). "[A] regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the [APA] until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Id*. at 808. Here, Plaintiff has failed to identify how the NWPR would harm or threaten it in a concrete manner.

First, Plaintiff has not identified a single, imminent project requiring a CWA section 404 permit. *See infra* Argument Part III.A. And based upon its members' descriptions of their own property, the waters in question may well no longer be considered "waters of the United States" under the NWPR and may no longer be subject to CWA regulation. Without identifying a "concrete action" applying the regulation to the Plaintiff, its claim is not ripe for review.

Second, Plaintiff's claim that seeking a "time-consuming and costly" Approved Jurisdictional Determination from the Corps is a harm ripe for review is without merit. Mot. at 33. The effort to determine whether the NWPR applies to Plaintiff's members' activities is *not* a cognizable injury. *See State Nat'l Bank of Big Spring v. Lew*, 958 F. Supp. 2d 127, 153 (D.D.C. 2013) ("[A] plaintiff should not be able to achieve standing to litigate an injury based on the cost of figuring out whether it has an injury."), *aff'd in part, rev'd in part*, 795 F.3d 48 (D.C. Cir. 2015). And, regardless, any such theoretical injury is not *caused* by the NWPR. Seeking either a determination of whether the CWA covers particular waters or a permit "are the same statutory and regulatory alternatives [Plaintiff's] members faced before the [NWPR]." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 14 (D.C. Cir. 2011). In any event, Plaintiff has no foundation to make that claim. Fed. R. Evid. 601. The Corps does not charge for issuing an Approved Jurisdictional Determination, nor does it require parties to obtain one. *See* 33 C.F.R. § 325.1 (setting fees for regulatory program applications, but not Jurisdictional Determinations). Plaintiff's claims are unripe for review.

### B.    Plaintiff Lacks Standing.

Similarly, Plaintiff lacks standing to challenge the NWPR because it has failed to demonstrate that at least one of its members has suffered a "concrete" or "immediate" injury in

fact necessary to establish standing. To establish standing at the preliminary injunction stage, a plaintiff must make a "clear showing" of his injury in fact. *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). "'[T]hreatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted) (emphasis in *Clapper*). Injury must also be "particularized," meaning it "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation omitted).

Here, Plaintiff's proffered declarations provide "no basis to conclude the [NWPR has] *caused* a 'concrete and particularized' and 'actual or imminent' threat" to any of Plaintiff's members. *Home Builders*, 667 F.3d at 14 (emphasis added). The only declaration[1] that alleges actual harm to Plaintiff's members as a result of the NWPR is found in the Third Rosa Declaration (ECF No. 97-4). This declaration claims that "the obligation to undergo permitting would effectively prevent [Plaintiff's] members of making productive use of any part of their land containing intermittent tributaries and/or non-abutting wetlands as described in the [NWPR]." *Id.* at ¶ 14. On its face, the declaration is nothing more than an "'[a]llegation[] of *possible* future injury' [that is] not sufficient." *Clapper*, 568 U.S. at 409.

Plaintiff has also offered nothing to show that this claimed injury will be *caused by* and is *redressable by* an injunction against the NWPR. As an initial matter, Plaintiff has offered nothing

---

[1] Plaintiff cites various other declarations in support of its argument that it has standing to challenge the NWPR. *See* Mot. at 10 (citing Rosa Decl. ¶¶ 4-6 (ECF No. 19); Supp. Rosa Decl., ¶ 3 (ECF No. 47); Martin Decl. ¶ 11 (ECF No. 18); Supp. Martin Decl. ¶¶ 3-4 (ECF No. 46)). But none of these declarations actually claim any harms arising from the NWPR. Rather, they only claim injuries arising from the 2015 Rule—which had a broader scope that exceeded the Agencies' statutory authority, leading to its remand—and which is not the subject of Plaintiff's preliminary injunction motion. *See generally id.*

to show that purported "intermittent streams" or "non-abutting wetlands" on its member's property will be subject to the NWPR. *See*, *e.g.*, *Home Builders*, 667 F.3d at 13-14 (holding property owner suffers no injury in fact "unless and until" a jurisdictional determination applies to that particular property or an enforcement action against the property owner is commenced and thus has no standing). And if the NWPR is enjoined, Plaintiff's members' properties may still be subject to federal jurisdiction under the scope of jurisdiction attributed to the CWA prior to the NWPR.

Because Plaintiff has failed to demonstrate an "actual" or "imminent" harm and has failed to establish that its purported harm is traceable to the NWPR, it lacks standing to bring this suit.

## II.    Plaintiff Is Unlikely to Succeed on the Merits.

Plaintiff argues that the plurality's decision in *Rapanos* bars the NWPR's inclusion of certain intermittent tributaries and non-abutting wetlands in the definition of "waters of the United States." *See* Mot. at 28. This is incorrect. Neither *Rapanos* nor any other Supreme Court case considered the Agencies' present interpretation and supporting administrative record. Nor do they provide a controlling analysis that "unambiguously forecloses the agency's interpretation" in the NWPR. *Brand X*, 545 U.S. at 983. The Agencies' reasonable interpretation is entitled to deference so long as it keeps to their statutory authority. In evaluating the NWPR, it is not relevant if one *Rapanos* opinion or another is "controlling." In any event, the NWPR is reasonable. And *Rapanos* did not facially "invalidate" prior regulations. But even if it had, the NWPR's definition of "waters of the United States" is not foreclosed. Accordingly, Plaintiff cannot show it is likely to succeed on the merits.

**A.    *Chevron* Requires Deference to the Agencies' Reasonable Interpretation.**

Where, as here, a challenged rule contains an agency's interpretation of statutory language, this Court reviews that interpretation under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984)*.* At Step One, this Court determines "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. "[I]f the statute is silent or ambiguous with respect to the specific issue," the Court proceeds to Step Two to determine "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. The NWPR reflects a reasonable interpretation of the phrase "waters of the United States" in CWA § 1362(7) under *Chevron* and *Brand X*.

**1.    The NWPR Does Not Exceed the Permissible Limits of the CWA.**

To determine whether a statute is ambiguous under Step One, courts employ "tools of statutory construction" to ascertain if "Congress had an intention on the precise question"; for that "must be given effect." *Chevron*, 467 U.S. at 843 n.9. Plaintiff does not contend "waters of the United States" is unambiguous—for good reason. The Supreme Court has recognized "ambiguity in the phrase 'navigable waters'" including waters of the United States. *E.g.*, *Rapanos*, 547 U.S. at 780 (Kennedy, J., concurring); *id.* at 752 (plurality) (the Act "is in *some* respects ambiguous"); *id.* at 796 (Stevens, J., dissenting) (noting "ambiguity inherent in the phrase 'waters of the United States'"); *see also Riverside Bayview*, 474 U.S. at 133; *SWANCC*, 531 U.S. at 170-71.

Plaintiff implicitly contends that the fractured *Rapanos* decision is "a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation" embodied in the

NWPR. *Brand X*, 545 U.S. at 982-83. In other words, Plaintiff suggests that the NWPR is outside of "any gap left, implicitly or explicitly, by Congress." *Chevron*, 467 U.S. at 843. It is not.

*First*, in *Rapanos*, the four-Justice plurality did conclude "that the Corps' interpretation of the statute is impermissible." 547 U.S. at 737. The plurality opined that jurisdiction would seemingly only extend to "relatively permanent bod[ies] of water connected to traditional interstate navigable waters," including certain "seasonal" waters, and wetlands with a "continuous surface connection" to such relatively permanent waters. *Id.* at 732 & n.5, 742. But the plurality addressed only the Corps' interpretation of the 1986 Regulations; it was not presented with the NWPR and its reasonable limits to CWA jurisdiction. Instead, by acknowledging statutory ambiguity, the *Rapanos* plurality's analysis left room for a different rule. And that's what the NWPR is.

As the Agencies explained, the "plurality opinion in *Rapanos* elaborated further on the wetlands that it did not consider jurisdictional under the Act, specifically, wetlands with only an 'intermittent, physically remote hydrologic connection to 'waters of the United States,' as those 'do not implicate the boundary-drawing problem of *Riverside Bayview*.'" NWPR Response to Comments: Legal Arguments at 42 (*available at* https://beta.regulations.gov/document/EPA-HQ-OW-2018-0149-11574) (quoting *Rapanos*, 547 at 742) (hereinafter "RTC"). Thus, "[t]he final rule is consistent with *SWANCC* and the *Rapanos* plurality and concurring opinions in that it would exclude isolated wetlands with only physically remote hydrologic connections to jurisdictional waters. . . . as well as with the Supreme Court's subsequent interpretation of *Riverside Bayview* and the scope of CWA jurisdiction over wetlands in *Rapanos*, in which both the plurality and concurring opinions agreed that 'waters of the United States' encompass wetlands closely connected to navigable waters." RTC at 43. Further, the Agencies reasonably concluded that

scientific principles and their technical expertise allowed for the inclusion of certain intermittent waters and certain hydrologically connected, though not continuously abutting, wetlands, consistent with these principles. *See* 85 Fed. Reg. at 22,288 ("[T]he agencies relied on the available science to help inform where to draw the line of federal jurisdiction over tributaries, consistent with their statutory authorities."). Consistent with the guideposts of the *Rapanos* plurality, these wetlands have more than a "physically remote hydrologic connection," and the Agencies devised a means to identify them without a significant "boundary-drawing problem." *See Rapanos*, 547 U.S. at 742.

*Second*, while Chief Justice Roberts joined the opinion of the plurality, he separately concurred to say that the Agencies should be "afforded generous leeway" for "developing *some* notion of an outer bound" of CWA jurisdiction. *Rapanos*, 547 U.S. at 758 (Roberts, C.J., concurring). The Agencies did so in the NWPR. And Justice Kennedy, too, did not consider his "significant nexus" standard to be unambiguously compelled by the CWA.[2] Justice Kennedy expressly offered his test "[a]bsent more specific regulations" by the Corps. *Id.* at 782.

*Third*, Plaintiff's attempt to invoke *Marks* is futile and ill-fitted for the question now presented to the Court. *See* Mot. at 15-28. *Marks* holds that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court *may be viewed* as that position taken by the members who concurred in the judgments on the narrowest grounds,'" 430 U.S. at 193 (emphasis added). But *Marks* cannot, as here, provide this Court a "binding" precedent that would unambiguously bar the Agencies' reasoned

---

[2] And, of course, the four dissenting Justices expressed the "Corps' resulting decision to treat these wetlands as encompassed within the term 'waters of the United States' is a quintessential example of the Executive's reasonable interpretation of a statutory provision." 547 U.S. at 788.

interpretation of the limits of the CWA or bar the deference courts show the Agencies under *Chevron* and *Brand X*.

Regardless, courts applying *Marks* to *Rapanos* have never adopted Plaintiff's argument that the *Rapanos* plurality opinion is the narrowest opinion. Some courts, including the Ninth Circuit, consider Justice Kennedy's opinion to be narrower than the plurality's because it is generally less restrictive of federal authority. *See United States v. Robertson*, 875 F.3d 1281, 1292 (9th Cir. 2017), *cert. granted, judgment vacated on other grounds*, 139 S. Ct. 1543 (2019), vacated as moot, 773 F. Appx. 391 (9th Cir. 2019)[3]; *N. Cal. River Watch v. City of Healdsburg*, 496 F.3d 993, 999-1000 (9th Cir. 2007); *United States v. Gerke Excavating, Inc.*, 464 F.3d 723, 724-25 (7th Cir. 2006) (per curiam); *United States v. Robison*, 505 F.3d 1208, 1221 (11th Cir. 2007).

Plaintiff urges this Court to disregard Ninth Circuit case law and find that the *Rapanos* plurality opinion is the "narrowest" opinion. Mot. at 17-27. Citing *United States v. Davis*, 825 F.3d 1014 (9th Cir. 2016), Plaintiff contends that the Court can disregard the Ninth Circuit's decision in *City of Healdsburg*, 496 F.3d 993, which expressly held that Justice Kennedy's concurrence is the "narrowest" and therefore the controlling opinion of *Rapanos*. Mot. at 25-28. This exact argument was already considered and rejected in *United States v. Robertson*, 875 F.3d at 1291. In finding that *Davis* does not conflict with *City of Healdsburg*, the Ninth Circuit in *Robertson* noted that a prior opinion could only be disregarded if the intervening higher authority's decision was "clearly irreconcilable" with the prior opinion. *Id.* at 1290. Plaintiff ignores *Robertson* in its

---

[3] Robertson died while his petition for certiorari was pending in the Supreme Court. For that reason, without considering the merits, the Supreme Court granted the petition and remanded to this Court with instructions to vacate its opinion. *See* 139 S. Ct. 1543 (2019); 773 F. Appx. at 391 (so vacating).

Motion and offers no explanation as to why that opinion or its reasoning should not be followed. There is no reason to deviate from this persuasive authority.

The First and Third Circuits have held that *Marks* could not be strictly applied to *Rapanos* because neither the plurality's nor Justice Kennedy's opinion is narrower than the other. *United States v. Donovan*, 661 F.3d 174, 182 (3d Cir. 2011); *United States v. Johnson*, 467 F.3d 56, 62-64 (1st Cir. 2006). Likewise, the Eighth Circuit concluded that, because the plurality and Justice Kennedy adopted different narrower tests, either test can support CWA jurisdiction. *United States v. Bailey*, 571 F.3d 791, 798-99 (8th Cir. 2009). Indeed, no court has held that the *Rapanos* plurality standard alone controls. *E.g.*, *United States v. Cundiff*, 555 F.3d 200, 210 n.2 (6th Cir. 2009); *Bailey*, 571 F.3d at 1005-06. Plaintiff's argument should be denied on these grounds.

*Fourth*, contrary to Plaintiff's claim, Mot. at 13-15, the Supreme Court has not weighed in on the limits of the CWA since *Rapanos*. As Plaintiff acknowledges, *County of Maui, Hawaii v. Hawaii Wildlife Fund*, 140 S. Ct. 1462 (2020), focused on point source discharges of pollutants, not the meaning of the phrase "waters of the United States." It merely referenced the *Rapanos* plurality's discussion on point source discharges. *Id.* at 1475. This in no way demonstrates that the *Rapanos* plurality opinion is controlling.[4] The Supreme Court cases cited by Plaintiff, Mot. at 14-15, do not reference the *Rapanos* plurality's interpretation of "waters of the United States." *See, e.g.*, *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 625, 633 (2018) (referencing *Rapanos* plurality opinion in describing CWA permitting schemes); *Hawkes*, 136 S. Ct. at 1811-12, 1815

---

[4] *Maui* held that point source discharges that reach navigable waters indirectly through the "functional equivalent of a direct discharge" are subject to CWA regulation. 140 S. Ct. at 1476. Thus, even if such waters were not themselves directly subject to CWA jurisdiction, *Maui* shows that point source discharges to such waters may be subject to CWA regulation if they convey pollutants to navigable waters.

(citing *Rapanos* for plurality's characterizations of the expanse of acreage to which the Corps has applied its regulatory definition, costs of obtaining a permit, and description of permitting process).

Moreover, although a majority of the *Rapanos* Court remanded the case for further consideration, Plaintiff mischaracterizes the nature of the remand. Both the plurality and Justice Kennedy agreed that "the Act . . . regulate[s] 'at least some waters that are not navigable in the traditional sense.'" Mot. at 20 (quoting *Rapanos*, 547 U.S. at 767 (Kennedy, J., concurring)). Plaintiff also fails to acknowledge that, before *Rapanos*, the Supreme Court had repeatedly reaffirmed that the CWA reaches some waters that are not navigable in the traditional sense. *See Riverside Bayview*, 474 U.S. at 134-35; *SWANCC*, 531 U.S. at 171. Thus, Plaintiff's argument that, if *Marks* cannot be applied to *Rapanos*, jurisdiction must be restricted to navigable-in-fact waters and directly abutting wetlands (*see* Mot. at 29) lacks any legal support.

So neither *Rapanos* nor any other Supreme Court case precludes the Agencies' new interpretation. To the contrary, *Rapanos* invites it. In the absence of a *Chevron* Step One statutory interpretation by a court, "a court's choice of one reasonable reading of an ambiguous statute does not preclude an implementing agency from later adopting a different reasonable interpretation." *United States v. Eurodif S.A.*, 555 U.S. 305, 315 (2009). This "established a 'presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows.'" *Brand X*, 545 U.S. at 982 (citation omitted). Accordingly, under *Brand X*, the Agencies are expressly empowered to reconsider a patently ambiguous statutory provision in the CWA, and the four-

Justice plurality from *Rapanos* does not preclude it. *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009). *See also* 547 U.S. at 758 (Roberts, C.J., concurring).

    **2.**    **The Agencies' Revised Regulatory Definition of "Waters of the United States" Is a Permissible Construction of Ambiguous Statutory Terms.**

The question at *Chevron* Step Two is "whether the agency's answer [to the interpretive question] is based on a permissible construction of the statute." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 54 (2011) (quoting *Chevron*, 467 U.S. at 843). The Agencies' interpretation need not be "the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts." *Entergy Corp.*, 556 U.S. at 218.

Interpreting ambiguous language "involves difficult policy choices," so judicial deference is critical as "agencies are better equipped to make [such choices] than courts." *Brand X*, 545 U.S. at 980; *see also Riverside Bayview*, 474 U.S. at 132 ("In determining the limits of its power to regulate discharges under the Act, the Corps must necessarily choose some point at which water ends and land begins. Our common experience tells us that this is often no easy task . . . [and] far from obvious."). Indeed, a "court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Brand X*, 545 U.S. at 982; *see also Eurodif*, 555 U.S. at 315 (holding agencies can adopt a different interpretation of an ambiguous statute than a prior court decision).

The NWPR is a reasonable interpretation of the CWA phrase "waters of the United States." It reflects a harmonized vision of both the plurality and concurring opinions in *Rapanos*. While Plaintiff insists that the Court must pick between Justice Kennedy's opinion and the plurality's

opinion, Mot. at 13, the Agencies reasonably sought to craft a rule that embraced their commonalities.

The NWPR is, first and foremost, based on the text of the statute, though informed by *Rapanos*, *SWANCC*, and *Riverside Bayview*. Those decisions articulated principles that served as guideposts for the Agencies' rulemaking. *See* 85 Fed. Reg. at 22,255-57, 22,267-68. The Agencies particularly analyzed common themes in the fractured *Rapanos* decision as well as the earlier *SWANCC* decision. *Id.* at 22,268. Ultimately, the Agencies concluded that "there are sufficient commonalities between these opinions to help instruct the agencies on where to draw the line between Federal and State waters." *Id.* Mindful of these commonalities, the NWPR avoids regulating non-navigable, isolated waters that lack a sufficient connection to traditional navigable waters. At bottom, its "unifying legal theory"—consistent with statutory text and Supreme Court guidance—asserts "federal jurisdiction over those waters and wetlands that maintain a *sufficient* surface water connection to traditional navigable waters." *Id.* at 22,271 (emphasis added).

Whether the plurality's standard or Justice Kennedy's standard is the "controlling" opinion of *Rapanos*, or if *Marks* cannot be applied to *Rapanos* at all, the result here would be the same. Neither the plurality nor Justice Kennedy forecloses the Agencies' reasonable interpretation of the extent of CWA jurisdiction which draws from common elements of each. Pursuant to *Brand X*, the Agencies were not specifically "bound" by—though they appropriately considered—the opinions of *Rapanos*. The Agencies were free to develop a different definition of "waters of the United States." And, the Agencies applied principles from both the plurality's and Justice

Kennedy's opinions. *See supra* Background Part I.B.3; 85 Fed. Reg. at 22,268, 71.[5] The Agencies'

reasoned, technically supported, and well-explained interpretation of "navigable waters" including

"waters of the United States" is within the congressional gap of deference. Plaintiff has no

likelihood of successfully showing otherwise.

    **B.**    **The NWPR Reasonably Defines "Tributary" To Include Intermittent Flow and "Adjacent Wetlands" to Include Certain Non-Abutting Wetlands.**

Contrary to Plaintiff's allegation, the NWPR's intermittent tributary and non-abutting

wetland provisions are reasonable and lawful. The Agencies thoroughly explained their rationale

for adopting these provisions. *See Chevron*, 467 U.S. at 843-44 (holding agency's interpretation

of an ambiguous statute is to be adopted if it is a reasonable interpretation of the statute); *Motor

Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (holding

that an agency decision is lawful if it provides "a satisfactory explanation for its action including

a rational connection between the facts found and the choice made").

Plaintiff argues that *Rapanos* forecloses the inclusion of intermittent tributaries and non-

abutting adjacent wetlands in the definition of "waters of the United States." Mot. at 28. This is

incorrect. As one court explained when recently declining to preliminarily enjoin the NWPR:

> [E]ven if the concurrence and the dissent can be read together to stand for the proposition that the *Rapanos* plurality's articulation of the maximum permissible reach of the statute is an improper construction, a holding that the Agencies must construe the statute more broadly is a bridge too far. Finally, nothing in either the *Rapanos* concurrence or the dissent—or in the two read together—can be

_____

[5] In fact, the NWPR even answers the primary criticism the *Rapanos* dissent had for the plurality opinion. This was that the "plurality [went] on, however, to define 'adjacent to' as meaning 'with a continuous surface connection to' other water," though "a dictionary" only requires that objects "lie close to each other, but *not necessarily in actual contact.*" *Rapanos*, 547 U.S. at 805. The NWPR extends jurisdiction to certain wetlands with a close hydrologic connection to, but that do not continuously abut, navigable waters and their tributaries, yet does not present an insurmountable "boundary drawing problem." 85 Fed. Reg. at 22,308/3.

characterized as a holding "that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."

*California*, 2020 WL 3403072, at *6 (citing *Brand X*, 545 U.S. at 982).

Moreover, by specifically defining "tributary" to include "intermittent" and "perennial" flow, and *not* "ephemeral" flow, the NWPR provides more technical clarity compared to the 1986 Regulations regarding the precise contours of what constitutes a "water of the United States." 85 Fed. Reg. at 22,274. While the differences between "perennial," "intermittent," and "ephemeral" flows are understood within the scientific community, these terms are often used differently or interchangeably in legal settings. This can lead to confusing guidance and decisions from courts. *See id*. (noting the *Rapanos* plurality seemed to confuse the concepts of "intermittent" and "ephemeral," despite their distinct meaning within the scientific community). The *Rapanos* plurality both expressed skepticism about whether certain "intermittent" waters are jurisdictional, 547 U.S. at 742, though elsewhere saying "[w]e do not necessarily exclude *seasonal* rivers, which contain continuous flow during some months of the year but no flow during dry months." *Id.* at 732 n.5. For greater clarity, the Agencies specifically defined "intermittent," "perennial," and "ephemeral" so that "tributaries," which include "intermittent" flow, are "waters of the United States." This rationale is consistent with the *Rapanos* plurality. 85 Fed. Reg. at 22,340 (defining "intermittent" as "surface water flowing continuously during certain times of the year and more than in direct response to precipitation").

The Agencies also thoroughly explained why the definition of "adjacent wetlands" includes more than just wetlands that directly "abut" a water identified in paragraphs (a)(1), (2), or (3) of the NPWR. 33 C.F.R § 328.3(c)(1) (2020). In doing so, the Agencies considered core legal principles set forth in *Riverside Bayview*, *SWANCC*, and *Rapanos* along with scientific

considerations relevant to the CWA. Isolated wetlands with only physically remote or irregular hydrologic connections to jurisdictional waters and isolated wetlands with only ecological connections are not "waters of the United States." 85 Fed. Reg. at 22,309 (citing *SWANCC*, 531 U.S. at 171-72; *Rapanos*, 547 U.S. at 742 (plurality); *id.* at 766-67 (Kennedy, J., concurring)). But wetlands with regular hydrologic surface connections to jurisdictional waters are "waters of the United States." *See Rapanos,* 547 U.S. at 742 (plurality); *Riverside Bayview*, 474 U.S. at 134. And, some wetlands that do not directly abut a jurisdictional water are still capable of establishing a regular surface water connection to a jurisdictional water. *See* 85 Fed. Reg. at 22,309-15 (noting that wetlands not directly abutting a jurisdictional water may nonetheless maintain a regular hydrological connection to a jurisdictional water under multiple circumstances such as flooding from a jurisdictional water in a typical year). Thus, it was entirely justified and within the Agencies' discretion to establish these categorical instances where wetlands not directly abutting jurisdictional waters are still "adjacent wetlands" under the NWPR. *See Riverside Bayview*, 474 U.S. at 132-34 (holding courts will defer to the agencies' determination of adjacent wetlands subject to CWA jurisdiction, given the technical nature of this determination).

## C.    Issue Preclusion Does Not Bar the NWPR.

Plaintiff's argument that the NWPR is barred by issue preclusion is baseless. Issue preclusion (or "non-mutual collateral estoppel") does not apply to claims against the United States. *United States v. Mendoza*, 464 U.S. 154, 157-64 (1984). *Mendoza* held that, although the government is bound by the principles of res judicata, "it is not further bound in a case involving a litigant who was not a party to the earlier litigation." *Id.* at 162. Contrary to Plaintiff's arguments, Mot. at 11-13, *Mendoza* applies here and bars Plaintiff's issue preclusion claim. *E.g.*, 464 U.S. at

161-162 (noting that successive Administrations may "take differing positions with respect to the resolution of a particular issue"); *id.* at 164 (distinguishing cases where "mutuality is present"). Because Plaintiff was not a party to *Rapanos*, issue preclusion is inapplicable here.

Moreover, the United States follows binding Supreme Court precedent. But there is no binding precedent that precludes the regulatory approach the Agencies took in the NWPR. And *Rapanos* did not invalidate the prior regulatory provisions. Even if it had, the NWPR is different than the prior regulations, and is entirely consistent with *Rapanos*.

First, Plaintiff's assertion that *Rapanos* "invalidated" the tributary and adjacent wetlands subsections of the 1986 Regulations, Mot. at 5, is incorrect. While both the plurality and Justice Kennedy concluded that the Corps' assertion of jurisdiction lacked necessary limitations and generally declined to defer to the Corps' interpretation of its regulations in that case, *Rapanos* was not a "facial" challenge to the Agencies' regulations. So neither opinion formally "invalidated" the regulations. *See* 547 U.S. at 725-26 (plurality); *id.* at 778 (Kennedy, J., concurring).[6] Rather, *Rapanos* was an "as-applied" challenge to particular jurisdictional decisions. *Id.* at 757 (remanding the case without disrupting regulations); *id.* at 759, 787 (Kennedy, J., concurring). Though informed by the opinions in *Rapanos*, the regulations remained in effect until and after the 2015

---

[6] Nor did *Rapanos* determine the regulations "violat[ed] the Commerce Clause and the Tenth Amendment." *See* Mot. at 30. Although Plaintiff tellingly does not raise constitutional claims in arguing success on the merits, it nonetheless argues that such claims establish proof of irreparable injury sufficient for a preliminary injunction. But Plaintiff offers only bare allegations of constitutional injury founded on its flawed reading of *Rapanos* and its erroneous conclusion that the NWPR's regulations are the same as the regulations in effect at the time of *Rapanos*. *Id.* at 30-31. Essentially, Plaintiff offers nothing to support its claim that the NWPR exceeds "Congress' power to legislate under the Tenth Amendment and the Commerce Clause." *Id.*

Rule. The NWPR replaced those regulations. So the facial legality of the NWPR is a separate issue and not controlled by the as-applied decision in *Rapanos*.

Second, the NWPR provides a different regulatory definition of "waters of the United States" than the regulations in effect at the time of *Rapanos*. As is readily apparent by comparing the regulatory text, the NWPR's definition of "waters of the United States" is generally narrower than the definition in the prior regulations. *Compare* 33 C.F.R. § 328.3(a)(5) (2019) (broadly including "tributaries" of any waters "the use, degradation or destruction of which could affect interstate or foreign commerce"), *with* 33 C.F.R. § 328.3(a)(2), (c)(12) (2020), 85 Fed. Reg. at 22,338-39 (defining a "tributary" as "a river, stream, or similar naturally occurring surface water channel that contributes surface water flow to a [traditional navigable water] in a typical year" and must be "perennial or intermittent"); *compare* 33 C.F.R. § 328.3(a)(2), (c) (2019) (including interstate wetlands and wetlands "adjacent to" any paragraph (a)(1) through (a)(6) water (other than waters that are themselves wetlands)) *with* 33 C.F.R. § 328.3(a)(4), (c)(1) (2020) (including only adjacent wetlands to traditional navigable waters, tributaries, or lakes and ponds and impoundments of jurisdictional waters and defining "adjacent wetlands" more narrowly than the term "adjacent" at 33 C.F.R. § 328.3(c) (2019)). While Plaintiff's reliance on the *Rapanos* plurality opinion is misplaced for the reasons stated *supra*, the plurality's consideration of "intermittent" waters was not informed by the NWPR's analysis. Nor did the plurality use the term "intermittent" as it is defined in the NWPR. *See* 85 Fed. Reg. at 22,274/1. Thus, *Rapanos* does not preclude the approach taken in the NWPR.

### III.    Plaintiff Fails to Demonstrate Imminent, Irreparable Harm from the NWPR.

Plaintiff alleges its members will be irreparably injured by "be[ing] required to seek permits for projects that are not legally regulated under the Clean Water Act." Mot. at 31. For the reasons explained *supra*, the NWPR is an appropriate exercise of the Agencies' legal authority under the CWA. But even if there were legitimate questions about whether and how the Agencies assert jurisdiction over intermittent tributaries and adjacent wetlands under the NWPR, Plaintiff fails to demonstrate the sort of imminent and irreparable injury necessary for preliminary relief.

### A.    Plaintiff's Allegations of Irreparable Harm Are Premature.

There is no evidence that any of Plaintiff's members intend to conduct a project requiring a CWA permit anytime soon. Even if the Agencies were "not attack[ing] Plaintiff's case on ripeness grounds, the question of irreparable harm in this context is inextricably intertwined with the issue of ripeness." *New York State Bar Ass'n v. Reno*, 999 F. Supp. 710, 714 (N.D.N.Y. 1998). A claim is not ripe for adjudication if the issues to be adjudicated are contingent upon future events that may never occur. *Texas v. United States*, 523 U.S. 296, 300 (1998).

Here, not only are the activities of its members speculative at this point, Plaintiff's assertion that the Agencies will seek to regulate these activities is speculative as well. For example, Mr. Martin's descriptions are so vague that it is entirely possible that none of the activities Mr. Martin professes to undertake even occur in waters subject to jurisdiction under the NWPR. Specifically, Mr. Martin attests that, every two years, he plows in the "riparian zone" on his farm and conducts excavation work "in the ephemeral tributaries" of his property to divert runoff into water tanks or troughs. Supp. Martin Decl. ¶¶ 3-4; *see also* Third Rosa Decl. ¶¶ 13-15 (claiming that plaintiff members will require permits and are precluded from working on their land as a result of the

NWPR). His intent to work in ephemeral tributaries to build runoff diversions may not be regulated under the CWA based on the NWPR. Supp. Martin Decl. ¶¶ 3-4[7]; *see also* 85 Fed. Reg. at 22,338 (noting that "ephemeral features" and excavations to store runoff are not "waters of the United States"). Furthermore, there is no indication that the riparian zone he claims to plow every two years or the "intermittent streams" he claims other Plaintiff members work in are even "waters of the United States" subject to CWA permitting. Supp. Martin Decl. at ¶ 3. Mr. Rosa similarly fails to establish activities that will be regulated based on the NWPR. *See generally* Third Rosa Dec. ¶¶ 5-6, 13-15. Based on the current record, this Court cannot make any determination about whether the waters described therein are actually jurisdictional under the NWPR. On this basis alone, Plaintiff has failed to show imminent, irreparable harm.[8]

Furthermore, while it may be unclear from the limited information Plaintiff has provided whether its members' activities would be covered by a statutory exemption from the requirements in CWA section 404, it is at least possible that some of their activities would qualify for exemption. *See generally* 33 U.S.C. § 1344(f) (exemptions). For instance, Plaintiff fails to address whether the activities in question—even if involving a "water of the United States" under the NWPR— would be subject to an exemption for certain ranching or farming activities. *Id.* § 1344(f)(1)(A).

---

[7] While Mr. Martin claims to own land containing tributaries that "intermittently flow[]," *see* Martin Decl. ¶¶ 5-6 (ECF no. 18), this declaration was submitted in response to a challenge to the 2015 Rule, not the NWPR. In other words, Mr. Martin may not be using the term "intermittent" as it was defined in the NWPR.

[8] To be clear, as this suit progresses, Plaintiff's members may be able to show that the NWPR covers waters on their property by submitting revised, more detailed declarations or obtaining an approved jurisdictional determination. This Court, however, need not delve into whether and how Plaintiff might show that the NWPR affects their members in future filings. As of now, Plaintiff has not met its current burden of showing irreparable harm justifying preliminary injunctive relief.

As a result, this Court cannot conclude that Plaintiff's members are harmed by the NWPR, let alone that its members are likely to suffer irreparable harm.

Accordingly, Plaintiff's request for a preliminary injunction is premature and should therefore be rejected.

### B.    Plaintiff Fails to Show Imminent, Irreparable Harm from the NWPR.

Plaintiff's alleged irreparable injury stems from the Agencies' assertion of jurisdiction over intermittent tributaries and non-abutting adjacent wetlands. The Agencies—in the Repeal Rule— recodified the 1986 Regulations in part to ensure that a consistent definition of "waters of the United States" was applied throughout the country. Importantly, the NWPR, which replaces the Repeal Rule, *reduces* the scope of waters subject to CWA permitting compared to the 1986 Regulations and Repeal Rule, as implemented.

> Regarding the permitting programs under sections 402 and 404 of the CWA, the final rule will reduce the scope of waters subject to CWA permitting compared with the baseline of the 2019 Rule as implemented. For instance, the 2019 Rule, as implemented, would regulate certain ephemeral streams found to have a significant nexus with traditional navigable waters according to the 2008 *Rapanos* Guidance, whereas the revised definition in this final rule categorically excludes ephemeral features. Because fewer waters and wetlands are federally regulated under this rule relative to the 2019 Rule as implemented, the agencies anticipate that the regulated public would need to prepare fewer CWA permit applications.

85 Fed. Reg. at 22,333.

Although asserting that the harms "are ongoing," Mot. at 33, Plaintiff provides no declaration or other evidence supporting that claim. If such harms are ongoing, they cannot result from, or be remedied by, an injunction of the NWPR. According to Plaintiff, if the NWPR takes effect, it would "prevent [Plaintiff] members of making productive use of any part of their land containing intermittent tributaries and/or non-abutting wetlands." Third Rosa Dec. ¶ 14. But, this

allegation is nothing more than speculation and cannot support an order for injunctive relief pending orderly proceedings on the merits at summary judgment. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.").

Moreover, there is no showing that this impact is caused by the NWPR, as opposed to the CWA generally. Mr. Martin's Declaration on this point is telling. He declares that in his more than 30 years operating his farms and through his 20 years of involvement with the Plaintiff organization, it is common for members to plow and grow crops in riparian zones of intermittent streams and that he regularly works in ephemeral tributaries. Supp. Martin Decl. ¶¶ 3-4; Martin Decl. ¶¶ 5-6. In other words, this work was conducted under a broader assertion of regulatory jurisdiction than he now complains of. He fails to explain why he can no longer conduct these activities even though the Agencies are somewhat contracting, rather than expanding, the potential jurisdiction over waters compared to the 1986 Regulations.

Moreover, even if this Court finds that Plaintiff's members will cease the projects referenced in its declarations, these allegations fail to show *imminent* harm. Plaintiff suggests that imminent and irreparable harm can be shown if its members may be required to conduct future unpermitted projects "on an unpredictable basis" in response to a sudden unknown future contingency, such as a change in weather. Mot. at 33-34. This is the kind of speculative harm, dependent on unknown future contingencies, courts routinely reject as insufficient in establishing "imminent" harm. *See*, *e.g.*, *Baldrige*, 844 F.2d at 675 (upholding a finding of no imminent and irreparable harm where multiple contingencies would have to occur before harm would occur); *Sassman v. Brown*, 73 F. Supp. 3d 1241, 1251 (E.D. Cal. 2014) (finding no irreparable harm when

plaintiff's theory of harm would only manifest if a series of future contingent events took place). And, Plaintiff's own evidence undermines the purported "unpredictability" of its members' work. *See*, *e.g.*, Supp. Martin Decl. ¶ 4 (limiting work on "ephemeral" streams only to catching "spring run off"). There is no evidence that the projects that Plaintiff's members attest to conducting will be done in the immediate future.

Lastly, the "purpose of a preliminary injunction[] is to preserve the status quo and the rights of the parties until a final judgment issues." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). Here, the Agencies' assertion of CWA jurisdiction over intermittent tributaries and non-abutting adjacent wetlands *is* the status quo. Even under the "significant nexus" test in place since the 2006 *Rapanos* decision, the Corps commonly asserts CWA jurisdiction over such waters. Granting a preliminary injunction against the NWPR—and, specifically, to excise only certain lines from the regulation in the manner Plaintiff suggests—would actually change the *status quo* application of the CWA's jurisdiction to the Plaintiff pending a decision on the merits.

### C.    Plaintiff's Alleged Injuries Are Not Irreparable.

Plaintiff alleges that its members will be irreparably harmed if "required to seek permits for projects that are not legally regulated under the Clean Water Act." Mot. at 31. Since their claims of injury are not imminent, preliminary relief should be denied on that ground alone. Even setting that point aside, Plaintiff's alleged injuries are not irreparable.

Plaintiff inappropriately attempts to recast its members' injury as a *constitutional* injury to avoid any meaningful scrutiny of whether their alleged injury is, in fact, irreparable. Although courts generally hold that violations of individual rights protected by the Constitution, such as the freedom of speech, are irreparable, *see*, *e,g*, *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1148

(9th Cir. 1998), Plaintiff alleges no such violation here. Instead, Plaintiff alleges that the NWPR's provisions on intermittent tributaries and non-abutting adjacent wetlands "violate the Tenth Amendment and the Commerce Clause." Mot. at 30. But such violations are not treated the same as violations to individual constitutional rights. *E.g.*, *All. of Auto. Mfrs. v. Hull,* 137 F. Supp. 2d 1165, 1173 (D. Ariz. 2001) (finding that violations of the Commerce Clause are not the same as violations of individual constitutional rights and are not irreparable harms). Indeed, Plaintiff's use of ellipses when quoting Federal Practice and Procedure obscures this distinction. *See* 11A Wright & Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2013) ("When an alleged deprivation of a constitutional right is involved, ***such as the right to free speech or freedom of religion***, most courts hold that no further showing of irreparable injury is necessary") (emphasis indicates portion omitted by Plaintiff).

Plaintiff cites two district court cases to allege that structural constitutional violations generally constitute irreparable harm. Mot. at 30 (citing *Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cty.*, 893 F. Supp. 301, 309 (D.N.J. 1995), and *Citicorp Servs., Inc. v. Gillespie*, 712 F. Supp. 749, 753 (N.D. Cal. 1989)). But other district courts have taken the opposite view, holding that "Plaintiffs are not entitled to a presumption of irreparable harm [where] the constitutional rights at stake . . . are not 'personal' in nature." *Prof'l Towing & Recovery Operators of Ill. v. Box*, No. 08 C 4096, 2008 WL 5211192, at *13 (N.D. Ill. Dec. 11, 2008); *Hull,* 137 F. Supp. 2d at 1173; *Am. Petroleum Inst. v. Jorling*, 710 F. Supp. 421, 431–32 (N.D.N.Y. 1989). Requiring Plaintiff's members to obtain permits before discharging into certain waters may constitute harm, but such allegations are not the sort of violation of a constitutional right that weighs heavily in an irreparable harm analysis.

For the foregoing reasons, Plaintiff lacks irreparable harm warranting injunctive relief.

**IV.    The Balance of Equities Weighs in Favor of the Agencies, and Issuance of the Injunction Requested by Plaintiff Would Harm the Public Interest.**

The "balance of harms" and "public interest" prongs favor the Agencies. These prongs, which merge when the government is the opposing party, are not just restatements of other elements of the preliminary injunction test. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiff carries the burden of showing that the harm to it outweighs any harm to the public interest. *Feldman v. Ariz. Sec'y of State's Office*, 842 F.3d 613, 627 (9th Cir. 2016).

Here, the balance of harms and public interest weigh against an injunction. The Agencies pursued a years-long effort to formulate a uniform national policy that can achieve consistency and clarity for the regulated public. *See*, *e.g.*, 85 Fed. Reg. at 22,252 (explaining the NWPR "provides clarity and predictability for Federal agencies, States, Tribes, the regulated community, and the public"). According to an Economic Analysis conducted by the Agencies, the benefits of implementing the NWPR and its clear lines of regulation and exclusion are greater than the costs. *See* EA at xiv-xxiii. The Agencies' efficient administration of the NWPR relies on a predictable and uniform application of the rule. *Id.* Granting Plaintiff's requested injunctive relief creates uncertainty and disruption, hampering the Agencies' ability to efficiently perform its regulatory functions. This is also problematic for regulated persons whose activities occur in multiple states— one of the key goals of federal regulation.

Indeed, courts recognize that the government has a "public interest" in the efficient administration of laws. *E.g.*, *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1281-82 (9th Cir. 2020) ("The government has a compelling interest in ensuring that injunctions—such as the one granted here—do not undermine separation of powers by blocking the Executive's lawful

ability" to administer its laws); *Sierra Club v. U.S. Army Corps of Eng'rs*, 990 F. Supp. 2d 9, 43 (D.D.C. 2013) (denying a preliminary injunction when "the public has an interest in regulatory efficiency" that comes with a uniform CWA permitting system, which could be undermined by a preliminary injunction).

Plaintiff claims that the balance of harms and public interest weigh in its favor because certain provisions of the NWPR at issue are unlawful. Mot. at 34-35. As discussed above, Plaintiff has no likelihood of success on the merits and has suffered no irreparable harm. Regardless, this argument conflates the "likelihood of success" element of a preliminary injunction analysis with the balance of harms/public interest element. Accordingly, the public interest in an efficient and uniform administration of the NWPR outweighs the non-existent harms Plaintiff purports here.

## V.    Even if Preliminary Injunctive Relief Is Awarded, the Remedies Proposed by Plaintiff Are Overbroad and Not Appropriately Tailored.

While inconsistent regulatory regimes are disruptive, any injunctive relief must still be no more extensive to a defendant than necessary to provide complete relief to plaintiffs. *See United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 478 (1995). The "limited purpose" of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction "must be narrowly tailored to remedy the specific harm shown." *City & Cty. of S.F. v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018).

Here, no injunctive relief is warranted but, even if it were, Plaintiff's requested injunctive remedies are overly broad and do not preserve the status quo. In addition to severing portions of the NWPR, Mot. at 8, Plaintiff demands one of three injunctive remedies: (i) outright prohibiting the Agencies from regulating non-abutting wetlands and intermittent tributaries; (ii) limiting the

Agencies from regulating non-abutting wetlands and intermittent tributaries unless the Agencies have conducted a case-specific significant nexus test; or (iii) prohibiting the Agencies from regulating all non-navigable tributaries and adjacent wetlands. *See* Mot. at 28-29. Each is contrary to the status quo. As explained *supra*, *see* Argument Part II.A-B, each of these proposals seek to prohibit the regulation of some water features Supreme Court case law has otherwise held the Agencies could regulate. In other words, none of the three proposed remedies attempt to return to the status quo—*i.e.*, the Repeal Rule and the pre-2015 Rule regime, including the "significant nexus" standard set forth in Justice Kennedy's *Rapanos* concurrence—and should be rejected accordingly.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for preliminary injunction.

Dated: June 29, 2020

Respectfully submitted,

*Of counsel:*
MATTHEW Z. LEOPOLD
*General Counsel*
DAVID FOTOUHI
*Principal Deputy General Counsel*
U.S. Environmental Protection Agency
Washington, DC

CRAIG R. SCHMAUDER
*Deputy General Counsel*
U.S. Department of the Army

DAVID. R. COOPER
*Chief Counsel*
U.S. Army Corps of Engineers

JONATHAN D. BRIGHTBILL
*Principal Deputy Assistant Attorney General*
Environment and Natural Resources

/s/ *Hubert T. Lee*

HUBERT T. LEE
SONYA J. SHEA
*Trial Attorneys*
Environmental Defense Section
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 514-1806 (Lee)
(303) 844-7231 (Shea)
Hubert.lee@usdoj.gov
Sonya.Shea@usdoj.gov

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2020, I filed the foregoing using the Court's CM/ECF system, which will electronically serve all counsel of record registered to use the CM/ECF system.

/s/ *Hubert T. Lee*